UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER B., | Case No. 4:20-CV-00232-CWD |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[1] | |
| Respondent. | |

## INTRODUCTION

Before the Court is Christopher B.'s Petition for Review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits filed May 15, 2020. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will affirm the decision of the Commissioner and dismiss the petition.

---

[1] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On June 28, 2017, Petitioner filed a Title II application for a period of disability and disability insurance benefits and, on July 21, 2017, Petitioner filed a Title XVI application for supplemental security income. Both applications allege disability beginning on December 15, 2016.

Petitioner completed the tenth grade and has prior work experience as a jockey, furniture assembler, and dump truck driver. Petitioner meets the insured status requirements through September 30, 2021. At the time of the alleged onset date, Petitioner was 50 years of age. Petitioner claims he is unable to work due to injuries to his left ankle, left hip, and right hand. The applications were denied initially and on reconsideration.

A hearing was conducted on April 18, 2019, before Administrative Law Judge (ALJ) David Willis. After hearing testimony from Petitioner and a vocational expert, the ALJ issued a decision finding Petitioner not disabled on June 17, 2019. (AR 13-26.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## ISSUES PRESENTED

1)    Whether the AJL erred in evaluating Petitioner's symptom statements.

2)    Whether the ALJ failed to properly consider the medical opinion evidence.

3)    Whether the ALJ erred at step five.

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 3**

## THE ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since December 15, 2016, the alleged onset date. (AR 15.) At step two, the ALJ determined Petitioner had the following severe impairments: a 2016 left ankle fracture, status post open reduction and internal fixation; and left trochanteric bursitis resulting from a 2007 left hip fracture with later open reduction and internal fixation. (AR 15.) The ALJ recognized another impairment in the record – a 2003 right wrist fracture - but concluded the condition was nonsevere. (AR 16.)

At step three, the ALJ found Petitioner did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 16-17.) The ALJ next assessed Petitioner's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with some postural and environmental limitations. (AR 17.)

At step four, the ALJ found Petitioner unable to perform past relevant work. (AR 24.) At step five, the ALJ found that, considering Petitioner's age, education, work

experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, including conveyor monitor, conveyor line attendant, furniture retail consultant, small products assembler, and machine feeder. (AR 24-25.) Thus, the ALJ determined Petitioner was not disabled.

## DISCUSSION

**1.      The ALJ Properly Evaluated Petitioner's Subjective Symptom Statements**

Petitioner argues the ALJ erred by failing to provide clear and convincing reasons to discredit his subjective symptom statements. (Dkt. 26.) Respondent maintains the AJL reasonably discounted Petitioner's statements. (Dkt 32.)

### A.      Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id*. (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [their] impairment could reasonably be expected to cause the severity of the symptom []as alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his or

her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating a claimant's subjective symptom testimony, the ALJ must consider all of the evidence in the record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029. The standard is whether there is substantial evidence to support the ALJ's conclusion. *Trevizo*, 871 F.3d at 674.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are sound. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's

MEMORANDUM DECISION AND ORDER - 6

pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### B.    Discussion

In his August 8, 2017 functional report, Petitioner stated he is unable to: ride horses because of arthritis and balance issues resulting from a 2007 hip injury; stand for long periods of time since breaking his ankle in 2016; and drive a truck because it hurts his left ankle to shift gears. (AR 289.) Petitioner claims he is limited in his ability to lift, squat, bend, stand, walk, kneel, and stair climb, because of his balance issues, and that if he "gets down, he can not get back up." (AR 292.) He states he can walk just one step until needing to rest an hour before resuming walking.

During the hearing, Petitioner testified that he is limited in his ability to write and squeeze with his dominant hand due to his right wrist injury (AR 39, 49-50); that he experiences cramping and "charlie-horse" like pain after sitting and getting in and out of the car due to his left hip injury (AR 40, 51); and that he has a limited range of motion, loss of balance, and inability to walk without assistance due to his left ankle injury (AR 52-53). Petitioner stated that his ability to sit, stand, and walk are limited due to pain in his hip and ankle, and that his ability to lift heavy objects is limited by pain in his wrist, hip, and ankle. (AR 54-55, 63-64.)

After accurately and thoroughly describing Petitioner's symptom statements, the ALJ found that Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 19.) The ALJ

discredited Petitioner's subjective symptom statements for a number of reasons, including: 1) inconsistencies in the statements; 2) lack of treatment; and 3) the medical evidence did not correspond with the severity of Petitioner's alleged limitations. (AR 20-24.) For the reasons that follow, the Court finds the ALJ provided clear, convincing, and specific reasons for rejecting Petitioner's symptom statements. *Trevizo*, 871 F.3d at 678

### i.      Inconsistencies in Petitioner's Symptom Statements

The ALJ observed that, despite the alleged severity of his impairments, Petitioner continued working as a jockey, furniture finisher, and truck driver following injuries to his right wrist and left hip. (AR 18-19.)[2] The ALJ noted that the job tasks performed by Petitioner following his injuries included using his right, dominant hand to finish furniture, lifting at or above the light external level, and driving truck.

Upon inquiry by the ALJ during the hearing, Petitioner's testimony about his physical limitations and work activity was inconsistent with his prior statements. The ALJ's decision identifies specific instances in the record where Petitioner's statements describing the severity of his limitations exceeded his hearing testimony. *See e.g.*, (AR 18-20) ("While the claimant described the job as generally sedentary in his work history report, he stated in hearing testimony that some of his duties involved swathing hay and bailing hay in addition to driving."); ("Regarding the claimant's ability to stand and/or walk, his allegations have ranged from extreme to moderately severe, alleging in his functional report that he was able to take no more than a single step at a time before

---

[2] Petitioner's ankle injury in 2016 occurred after the alleged onset date and after his last date of employment. Notably, Petitioner left his last employment as a truck driver prior to suffering his ankle injury.

needing to rest one hour, while testifying that he is able to stand up to approximately 15 minutes at a time and walk approximately 20 feet at a time.").

The Court finds the ALJ's reasoning for discrediting Petitioner's symptom statements based on inconsistencies is specific, clear and convincing, and supported by substantial evidence in the record. Most notably, the ALJ found that Petitioner's work activity following his injuries evidenced significantly greater exertional abilities than alleged by Petitioner.

Relying on *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007), Petitioner argues his work from 2006 to 2016 is not a factor negating his credibility because he worked in spite of his symptoms, not because they were less severe than alleged. (Dkt. 33 at 4.) The Court disagrees.

In *Lingenfelter*, the petitioner's failed attempt to work despite his impairments for a short period of time was due only to extreme economic necessity. The court concluded that, under such circumstances, the petitioner's brief attempt to work was "in spite of his symptoms, not because they were less severe than alleged." *Id.* at 1039.

In contrast, Petitioner here returned to work successfully for several years after both his right wrist and left hip injuries. Petitioner's left ankle injury in 2016 occurred after he stopped working all together, and was unrelated to the cumulation of his employment. Simply, the circumstances that existed in *Lingenfelter* are not presented here. Petitioner's work activities following his injuries are relevant to the ALJ's evaluation of Petitioner's symptom statements.

For the reasons stated above, the Court finds the ALJ properly evaluated

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner's symptom statements in light of his work activities and that the ALJ's reasoning is supported by substantial evidence.

### ii.    Lack of Treatment

The ALJ found the lack of regular or routine treatment or urgent care despite alleging rather severe pain symptoms and limitations, "tend[s] to weigh against such extreme limitations even in the context of the [Petitioner's] financial constraints" and lack of medical insurance. (AR 20.) The ALJ stated: "[f]or an individual alleging such extreme limitations, it is not insignificant that there are not at least some urgent care records." (AR 20.)

Petitioner challenges the ALJ's conclusions on this point, arguing the record shows ongoing treatment and that he lacks health care coverage. (Dkt. 33 at 5.)[3] Petitioner also faults the ALJ for speculating that Petitioner should have sought further treatment, arguing there is no medical opinion to support the ALJ's finding. However, the Court finds the ALJ did not err in considering the lack of treatment as a basis for discrediting Petitioner's symptom statements.

An ALJ may appropriately consider treatment history, or lack thereof, in evaluating a petitioner's symptom statements. SSR 16-3p at 6-7 (The Commissioner recommends assessing records of medications, treatments and methods used to alleviate symptoms as well as medical source opinions and reports regarding claimants treatment and responses to treatment.). "[I]f a claimant complains about disabling pain but fails to

---

[3] Petitioner offers no citations to the record in support of his argument that "the record shows ongoing treatment." (Dkt. 33 at 5.)

seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

However, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Id*. (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). The ALJ must consider possible reasons a petitioner may provide for not complying with treatment or seeking treatment consistent with the degree of his or her complaints. *See* SSR 16-3p.8 Inability to afford treatment or access low cost medical services can be a legitimate reason for not seeking medical treatment. *See* SSR 16-3p; *Trevizo*, 871 F.3d at 681; *see also Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it").

Here, the ALJ correctly considered the lack of treatment records as a basis for discrediting Petitioner's symptom statements. The ALJ's findings concerning the lack of treatment were not improper medical opinions as asserted by Petitioner. Rather, the ALJ appropriately recognized Petitioner's financial constraints and lack of medical insurance in evaluating the treatment history. (AR 20.) However, given the extreme level of the pain and limitations alleged, e.g., inability to walk more than one step or hold a pen, it was reasonable for the ALJ to consider the absence of records seeking treatment or urgent

care as a basis for discrediting Petitioner's statements. Further, the lack of treatment records was only one basis for the ALJ's decision to discredit Petitioner's symptom statements.

### iii.    Medical Evidence

Petitioner argues the ALJ failed to provide any basis for concluding Petitioner's statements were inconsistent with the medical records. (Dkt. 26 at 13-15.) Petitioner maintains his testimony during the hearing concerning his impaired balance and severe pain in his hip and ankle was consistent with the medical records and the reports of Dr. Head and Dr. Hill. Further, Petitioner contends the ALJ erred by relying on isolated portions of the record to discredit his symptom statements, instead of considering the record as a whole and the combination of Petitioner's impairments. (Dkt. 33 at 3-4.)

The Court finds the ALJ accurately reviewed the medical records and reasonably concluded that the physical examination findings and objective medical evidence did not correspond with the severity of Petitioner's alleged limitations regarding his ability to walk, stand, sit, and balance. (AR 20-21.) The records from a November 18, 2016 examination by Dr. Joseph Lilijenquist, orthopedic specialist, show normal healing of Petitioner's left hip injury post-surgery with some tenderness and reduced range of motion, but nearly normal hip strength. (AR 345-346.) Dr. Lilijenquist opined that Petitioner's reported complaints of pain and difficulties balancing were due to weakened muscles that had not fully recovered from his hip surgery, and recommended physical therapy. The ALJ reasonably concluded that Petitioner had minimal limitations at that time, prior to his ankle injury, when considering Dr. Lilijenquist's findings in conjunction

with Petitioner's ongoing work as a truck driver. (AR 21.)[4]

In February 2017, eight weeks following Petitioner's surgery to repair his ankle fracture, x-rays showed "excellent alignment of the distal fibula and posterior malleolus fragments" with a moderately displaced medial malleolus fragment. (AR 21, 392-393.) Dr. Head's examination in August 2017 found Petitioner had normal and symmetric muscle mass and strength in both the upper and lower extremities. (AR 394-395.) Dr. Head opined that Petitioner could lift and carry between twenty to fifty pounds occasionally, sit for more than two hours at one time without a break, and stand for at least thirty to sixty minutes without a break. (AR 397.) Dr. Head observed that Petitioner walked with a limp, was able to get in and out of a chair and on and off the examination table without difficulty, but noted that he had some difficulty with squatting. Dr. Head also noted Petitioner's ability to walk would be at a slow pace on level ground, but did not indicate any need for assistive devices.

Based on the foregoing, the Court finds the ALJ did not err in concluding that the objective medical evidence was not consistent with Petitioner's statements regarding the intensity, persistence, and limiting effects of his symptoms.[5] While the objective records demonstrate Petitioner had some limitations in his ability to lift, sit, stand, and walk, the ALJ's conclusion that the objective findings in the records do not support the level of severity alleged by Petitioner in his statements is supported by substantial evidence.

Further, the ALJ properly considered the record as a whole and discussed the

---

[4] Dr. Lilijenquist's exam occurred prior to Petitioner's December 2016 ankle injury.

[5] As more fully explained below, the ALJ found Dr. Hill's 2018 opinion unpersuasive. Therefore, the ALJ properly did not address or rely on Dr. Hill's conclusions in evaluating Petitioner's symptom statements.

cumulative impacts of Petitioner's impairments in evaluating the objective findings and Petitioner's statements. The ALJ's conclusion is supported by substantial evidence.

## 2.      The ALJ Properly Considered the Medical Opinion Evidence

Petitioner argues the ALJ erred in evaluating the medical opinions of Dr. Rex E. Head and Dr. Richard Hill. (AR 26, 33.) Respondent disagrees, asserting the ALJ properly considered the opinion evidence. (Dkt. 22.)

### A.      Legal Standard

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The new regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source" as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the regulations now provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an

examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ need only address the remining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1) (explaining that "voluminous

**MEMORANDUM DECISION AND ORDER - 15**

case records" necessitate source-level articulation).

Because Petitioner's applications were filed after March 27, 2017, the applications are subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"). Accordingly, the Court will apply the revised regulations here.[6]

Under the revised regulations, the ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind, the Court proceeds to its analysis of the

---

[6] Petitioner's briefing relies on authority relating to an ALJ's evaluation of medical opinion evidence applicable to claims filed prior to March 27, 2017. (Dkt. 26, 33.) In contrast, Respondent contends the revised regulations "differ substantially" from prior regulations. (Dkt. 32.) The Ninth Circuit has not addressed whether or how the revised regulations alter the Court's review of the adequacy of the ALJ's consideration of medical opinion evidence. *See Andrew S. v. Comm'r Soc. Sec.*, 2021 WL 3260354, at *2 (W.D. Wash. July 30, 2021). The Court will apply the revised regulations as explained herein.

medical evidence in this case.

**B.    Dr. Head's Opinion**

Dr. Head performed a consultative medical examination of Petitioner on August

24, 2017. (AR 392.) Dr. Head opined that Petitioner's right wrist, left hip, and left ankle

fracture with ongoing pain, limit him to:

> lifting and carrying more than 50 lbs. occasionally, lifting and carrying 20-
> 50 lbs. frequently, lifting and carrying 10-20 lbs. constantly, sitting for
> more than 2 hours at one time without break, sitting for 6-8 hours with
> break during an 8 hour work day, standing for 30-60 minutes at one time
> without break, standing for 2-4 hours with break during an 8 hour work
> day, walking for 30-60 minutes at one time without break at a slow pace on
> level ground, walking for 2-4 hours with break during an 8 hour work day,
> manipulating small objects or using a keyboard due to right hand pain,
> climbing, stooping, bending, balancing, crawling, kneeling, crouching,
> overhead reaching or reaching in front, exposure to cold, and traveling.

(AR 397.)

The ALJ found Dr. Head's opinion persuasive in assessing Petitioner as having a

reduced range of light work activity, giving great weight to Dr. Head's examination

findings. (AR 22.) The Court finds the ALJ properly considered and evaluated Dr. Head's

opinion. Critically, the ALJ discussed the supportability and consistency of Dr. Head's

opinion.

For instance, relevant to Petitioner's left ankle injury, the ALJ explained that Dr.

Head reviewed the most recent x-rays from February 2017 and that Dr. Head's lower

extremity findings were as expected given Petitioner's ongoing rehabilitation from

surgery. (AR 21.) The ALJ accurately discussed Dr. Head's observations during the

examination concerning Petitioner's ability to ambulate and Dr. Head's assessment of

**MEMORANDUM DECISION AND ORDER - 17**

Petitioner's range of motion, strength, and ability to use his extremities. (AR 21-22.) Notably, the ALJ recognized that Dr. Head did not indicate any ongoing need for an assistive device for Petitioner to walk at the level opined, despite the fact that Petitioner was utilizing a Cam walker and crutches at the time of the evaluation as he was still non-weight bearing from his surgery. (AR 21-22.)

The ALJ reasonably concluded that "Dr. Head ultimately opined that [Petitioner] remained a rather capable individual" given Petitioner's abilities to lift and carry, sit, stand, and walk as demonstrated during the exam. (AR 21.) The ALJ recognized post-operative rehabilitation was continuing and that Dr. Head's opinion "might not have been intended to reflect the claimant's final long-term baseline level of physical functioning." (AR 22.) Nevertheless, the ALJ included postural and manipulative limitations in the RFC assessment consistent with Dr. Head's opinion and assessment of Petitioner's restrictions resulting from his impairments.

The Court finds the ALJ's consideration and discussion of Dr. Head's opinion satisfies the requirements of the revised regulations, specifically the supportability and consistency of the opinion. The ALJ explained his rational for finding Dr. Head's opinion persuasive based on the examination findings showing Petitioner retained the physical capabilities of a "rather capable individual." (AR 21.) As discussed below, the ALJ explained the difference in the opinions of Dr. Head and Dr. Hill with regard to Petitioner's use of and need for assistive walking devices. Further, the ALJ appreciated that Dr. Head's opinion was "somewhat nonspecific regarding manipulative limitations or with regard to [Petitioner's] ability to climb, stoop, bend, balance, crawl, kneel,

crouch, etc." (AR 22.) The RFC limitations adopted by the ALJ appropriately accounted for the lack of specificity by "entirely precluding any need to balance, crouch, or crawl as part of job duties" and only occasional climbing of ramps and stairs. (AR 22.)

The ALJ's decision also addressed other relevant regulatory factors in evaluating the persuasiveness of Dr. Head's medical opinion. The ALJ described that the purpose and extent of the examination was a "scheduled consultative medical examination," and Dr. Head's familiarity with other evidence in the record. (AR 21) ("Dr. Head had access to the claimant's most recent x-rays from February 2017.")

Based on the foregoing, the Court finds the ALJ properly considered and evaluated Dr. Head's opinion. The ALJ's conclusion finding Dr. Head's opinion persuasive is well reasoned and supported by substantial evidence.

### C.      Dr. Hill's Opinion

Dr. Hill performed an evaluation of Petitioner's impairments on November 29, 2018. (AR 455.) Dr. Hill's report describes Petitioner's past injuries, work history, medical history, general health condition, and symptom statements. (AR 455-456.) The report provides Dr. Hill's general medical observations and physical assessment of Petitioner's extremities, antalgic gait, and that Petitioner was "very unsteady" in heal to toe walking. Dr. Hill concludes by finding Petitioner is "disabled by the effects of his old joint injuries and the accident of 12/22/2016. I support his pursing long term disability, finding him unable to do even sedentary fulltime work." (AR 456.) Specifically, Dr. Hill opined that:

[Petitioner] is most impaired in use of the left leg secondary to degenerative

changes from old fractures to left ankle and left hip. He cannot do repetitive gripping. Weight bearing on left hip and ankle become painful at short distances. He was managing to find employment despite the pain from his jockey injuries until fracturing the left ankle in 2016. With progression of pain from all the injuries he is now unable to do even sedentary employment fulltime. He would have frequent absences and have many unscheduled breaks and usually not be able to finish a 8 hr shift. His problems will more likely than not progressively worsen in all symptoms with time. After reviewing his medical history and doing a physical examination it is my professional opinion that he currently can walk up to 10 minutes or 50 yards at a time and 2 hrs of 8 hrs, stand for 10 minutes at a time and 2 hrs of 8, and sit up to 15 min at a time and 4 hrs of 8. He often spends time reclining to alleviate pain. He has difficulty carrying thinks requiring a cane for balance and having poor stability. His las fulltime work ended 12/22/2016. He has not been able to sustain a job since.

(AR 456.)

The ALJ found Dr. Hill's opinion unpersuasive for three reasons. (AR 23.) First, some of Dr. Hill's findings from the physical examination were unrelated to the reasons Petitioner alleges he is unable to work – e.g., reduced range of motion and tenderness in his shoulders, neck, and lumbar spine. Second, Dr. Hill believed Petitioner required an assistive device for ambulation, but Petitioner testified that he elects to not use any type of device for the most part. Third, the lack of medical evidence supporting Petitioner's statement and Dr. Hill's finding that Petitioner needs to recline with the frequency alleged and, consequently, Dr. Hill's opinion regarding excessive time off task and excessive absences. (AR 23.) For the reasons that follow, the Court finds the ALJ properly considered and evaluated Dr. Hill's opinion.

The ALJ addressed both the supportability and consistency factors in his discussion of Dr. Hill's opinion. As to supportability, the ALJ explained that Dr. Hill's assessment of Petitioner's limitations lacked objective support. Instead, Dr. Hill relied on

Petitioner's self-reports of his symptoms and limitations. (AR 23.) The ALJ noted that

Dr. Hill did not perform any record review and that Dr. Hill's findings were based on his

own independent physical examination and Petitioner's statements. (AR 22-23.)[7]

However, as discussed above, Petitioner's statements regarding the intensity, persistence

and limiting effects of his symptoms were not entirely credible.

As to consistency, the ALJ pointed out that Dr. Hill's opinion regarding

Petitioner's limited ability to walk and need for a cane are inconsistent with Petitioner's

testimony that he did not utilize a cane a majority of the time and that Petitioner appeared

at the hearing without a cane. (AR 22-23, 56.) Further, Dr. Hill's assignment of

functional limitations based on findings that Petitioner had pain in his shoulders, neck,

and spine are inconsistent with the medically determinable impairments alleged by

Petitioner and considered by the ALJ. (AR 275) (listing left hip, left ankle, and right hand

as the impairments limiting Petitioner's ability to work); (AR 15-16) (finding Petitioner

had severe impairments of left ankle fracture, left trochanteric bursitis resulting from a

left hip fracture). Again, the ALJ noted that Dr. Hill relied on Petitioner's symptom

statements which the ALJ found were inconsistent with the objective medical evidence.

The ALJ also addressed other relevant regulatory factors including the purpose and extent

of Dr. Hill's examination, and Dr. Hill's lack of familiarity with other relevant evidence

in the record. (AR 22.)

---

[7] Dr. Hill prefaced his option by stating that he had reviewed Petitioner's "medical history" and performed a physical exam. (AR 456) ("After reviewing his medical history and doing a physical examination it is my professional opinion….") However, there is no indication in the report that Dr. Hill reviewed medical records. Rather, Dr. Hill's report appears to be based entirely on Petitioner's self-reports of his medical history and the physical examination. The Court finds the ALJ's conclusion that Dr. Hill did not perform any record review is a reasonable interpretation of the record.

For these reasons, the Court finds the ALJ did not err in concluding Dr. Hill's opinion is unpersuasive as it is unsupported and inconsistent with other evidence in the record. Further, the ALJ's decision is supported by substantial evidence. Petitioner's disagreement with the ALJ's findings and conclusions does not warrant remand. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (If "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record."), *superseded by regulation on other grounds*; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record.'"). Accordingly, the Court finds the ALJ did not err in his consideration of Dr. Hill's opinion.

### 3.    The ALJ Did Not Err at Step Five

Petitioner asserts the ALJ erred at step five in two respects. First, by incorrectly applying the Medical-Vocational Guidelines (the grids) for light work instead of sedentary work, given Petitioner's limitations related to his ability to walk, stand, balance, and grip. (Dkt. 26, 33.) Second, by failing to identify jobs that exist in the national economy that Petitioner can perform consistent with the Dictionary of Occupational Titles (DOT). (Dkt. 26, 33.)

Respondent maintains the ALJ appropriately considered the grids and the vocational expert's testimony in determining that Petitioner could perform other work that exists in the national economy given his RFC and other vocational factors. (Dkt. 32.) For the reasons that follow, the Court finds the ALJ did not commit err at step five.

### A.     Legal Standard

At step five, the burden shifts to the Commissioner to prove there are jobs that

exist in significant numbers in the national economy which the claimant can perform

consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(g); 416.920(g). The Commissioner can meet this burden by relying on the

testimony of a vocational expert or by referencing the Medical-Vocational Guidelines

(the grids). *Lounsbury*, 468 F.3d at 1114; *Tackett*, 180 F.3d at 1101.

### B.     The ALJ Properly Applied the Grids

The grids consist of a matrix of four factors – physical ability, age, education, and

work experience - and set forth rules that identify whether jobs requiring a specific

combination of these factors exist in significant numbers in the national economy.

*Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). The grids categorize jobs by their

physical exertional requirements – sedentary work, light work, and medium work – and

set forth a table for each category. *Tackett*, 180 F.3d at 1101 (citing 20 C.F.R. Part 404,

Subpart P, Appendix 2, § 200.00).

Where the claimant has only exertional impairments, the ALJ must apply the

grids. *Lounsbury*, 468 F.3d at 1114-15. If the claimant's limitations are only non-

exertional, "the grids are inappropriate, and the ALJ must rely on other evidence." *Id.*;

*see also* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e). If claimant's limitations are

both exertional and non-exertional, the "ALJ must consult the grids first." *Lounsbury*,

468 F.3d at 1115.

When the grids accurately and completely match the claimant's qualifications,

"the guidelines direct a conclusion as to whether work exists that the claimant could perform." *Heckler*, 461 U.S. at 462; *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (The ALJ must rely on the grids only where the claimant possesses "substantially uniform levels of impairment" in relation to the four vocational factors – i.e., age, work experience, education, and physical ability.). However, "[w]hen the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). That is to say, where "a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert." *Thomas*, 278 F.3d at 960 (citations omitted).

Here, the ALJ found that Petitioner retained the RFC to perform light work, except that he had the following relevant limitations: lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for about six hours in an eight hour work day; and frequently handle and finger with the right dominant upper extremity. (AR 17.) Thus, the ALJ assessed the Petitioner as having both exertional and non-exertional limitations.[8]

---

[8] Exertional limitations relate to an individual's restrictions of physical strength and their abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* SSR 83-10; SSR 96-8p. In contrast, the regulations describe non-exertional limitations as it relates to work-related restrictions that do not depend on an individual's physical strength, i.e., all physical limitations not reflected in the external strength demands, such as postural, manipulative, visual, and communicative. *Id.* Non-external capacity also considers environmental factors and mental limitations.

Accordingly, at step five, the ALJ first considered grid rule 202.11 which directs a finding of not disabled for an individual of Petitioner's age, education, and work experience if that individual could perform the full range of light work. (AR 24); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.11 (Person closely approaching advanced age, of limited education, with previous work experience of skilled or semiskilled not transferable.).

However, Petitioner's impairments limit his ability to perform all or substantially all of the exertional demands of light work. Indeed, Petitioner's RFC does not directly correspond to either the light or the sedentary exertion levels under the grids.[9] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00 & 202.00; *see also* (AR 25) (Petitioner's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations [such that a vocational expert was necessary to] determine the extent to which these limitations erode the unskilled light occupational base.").

Thus, it would have been improper for the ALJ to rely exclusively on the grids in

---

[9] Sedentary work is work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Light work is work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

making the step five determination. *See Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th

Cir. 1998) ("[T]he grids will be inappropriate where the predicate for using the grids –

the ability to perform a full range of either medium, light, or sedentary activities – is not

present."); *see also Tackett*, 180 F.3d at 1101 ("a claimant must be able to perform the

full range of jobs in a given [exertional] category for the grids to apply"); SSR 83-11,

SSR 83-12, and SSR 83-14. The Court finds, as more fully explained below, that the ALJ

properly considered the grids and relied on the testimony of the vocational expert in

making the step five determination. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir.

2002).

      In the first hypothetical, the ALJ asked the vocational expert whether there were

jobs available to an individual with the Petitioner's age, education, work experience, and

RFC. (AR 70.) The ALJ specifically asked whether there were "bench-type work or

things of that nature" available that would tolerate a modest sit/stand option that allowed

sitting for fifteen minutes after approximately forty-five minutes of standing or walking.

(AR 70.) The vocational expert identified three representative occupations: conveyor

monitor (DOT number 921.685-046), conveyor attendant (DOT number 524.687-022),

and furniture retail consultant (DOT number 295.357-018). (AR 70-71.)

      When asked for additional jobs with greater numbers of availability in the national

economy, the vocational expert identified bench assembler (DOT number 706.684-042),

small products assembler (DOT number 706.684-022), and machine feeder (DOT number

715.686-014). (AR 71-71.) The vocational expert further testified that more jobs existed

in the national economy for an individual with an occasional limitation of the right

dominate hand, in addition to the six he had already identified as representative occupations. (AR 73.)

Relying on the vocational expert's testimony, the ALJ concluded that five of the representative occupations identified established Petitioner is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Dkt. 25.) The five jobs collectively number 126,500, which is a sufficiently significant number of jobs to satisfy the step five determination. *See Moller v. Astrue*, 13 F.Supp.3d 1032, 1042 (N.D. Cal. 2012) (Courts have found work is available in "significant numbers" when there are tens of thousands of jobs nationally that the claimant can perform.). Therefore, the ALJ's finding that an individual with Petitioner's RFC and other vocational factors could find work that exists in significant numbers in the national economy is supported by substantial evidence.

Petitioner disagrees, arguing he cannot perform any of the jobs identified by the vocational expert because they require the ability to stand and walk for six hours a day, the ability to grasp objects, and that he not be absent three days a month. (Dkt. 33 at 7.) Petitioner contends his impairments, as opined by Dr. Hill, limit his ability to stand, walk, balance, and repetitively grip, rendering him incapable of performing light work. (Dkt. 26 at 10-11.) Thus, Petitioner argues, the ALJ erred by failing to find him disabled under grid rule 201.10. (Dkt. 33 at 2.)[10]

---

[10] Petitioner also incorrectly argues grid rule 203.18 directs a finding of disabled. (Dkt. 26 at 9.) However, grid rule 203.18 applies to an individual who is capable of <u>medium</u> work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 203.18. Here, the ALJ concluded Petitioner was limited to a reduced range of <u>light</u> work. Moreover, grid rule 203.18 does not support Petitioner's assertion, because it directs that an individual meeting its parameters is <u>not disabled</u>.

Grid rule 201.10 directs a finding of disabled for an individual limited to sedentary work who is closely approaching advanced age, has limited education, with previous work experience that is not transferable. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.10. Here, however, the ALJ assessed Petitioner as having the RFC to perform a reduced range of light work with some exertional and postural limitations. Thus, the ALJ correctly considered grid rule 202.11, applicable to light work, and next inquired of the vocational expert to determine whether a person with Petitioner's limitations could find work sufficiently available in the national economy. *Thomas*, 278 F.3d at 960.

Petitioner's arguments to the contrary essentially disagree with the ALJ's determination that Petitioner has the RFC to perform light work instead of sedentary work. These arguments echo Petitioner's challenges to the ALJ's evaluation of the medical opinion evidence discussed above.

For the reasons previously articulated, the Court finds the ALJ properly considered the medical opinion evidence. Therefore, the ALJ did not err in relying on Dr. Head's opinion in determining Petitioner's RFC, which is supported by substantial evidence. Specifically, the record supports the ALJ's assessment that Petitioner retained the RFC to perform light work with certain exertional and postural limitations. At step five, the ALJ appropriately considered the extent to which Petitioner's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations and determined the extent to which these limitations eroded the unskilled light occupational base by utilizing the vocational expert. (AR 24-25.) Thus, the ALJ did not err in failing to consider the grid rule applicable to sedentary work.

**MEMORANDUM DECISION AND ORDER - 28**

Petitioner further argues the ALJ failed to reconcile the conflict between the vocational expert's testimony and the DOT. (Dkt. 26.) The Court disagrees. The ALJ satisfied his affirmative duty to identify and explain the conflict between the vocational expert's testimony and the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007); *Lamear v. Berryhill*, 365 F.3d 1201, 1205 (9th Cir. 2017); SSR 00-04p.

During the hearing, the ALJ asked the vocational expert to identify the areas not specifically addressed in the DOT or its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SOC), and to explain the basis for his testimony. (AR 74.) The vocational expert testified that "[t]he sit/stand duration that was placed in the hypothetical, and also, the off task of 15%, and the two-plus days a month that were – that are missed, are not in the DOT, and that comes from my 25 years of working within the industry." (AR 74.) The vocational expert represented that the remainder of his testimony was consistent with the DOT and SOC. In his decision, the ALJ determined, pursuant to SSR 00-4p, that the vocational expert's testimony was consistent with the information contained in the DOT, "apart from limitations such as unilateral limitations in the upper and lower extremities, on which the vocational expert testified that he relied upon his experience and expertise in the field of vocational rehabilitation." (AR 25.)

The Court finds the ALJ made an appropriate inquiry into the conflict and provided a reasonable explanation reconciling the conflict between the vocational expert's testimony and the DOT. Thus, the ALJ did not err in relying on the vocational expert's testimony in making the step five determination. *Zavalin v. Colvin*, 778 F.3d

842, 846 (9th Cir. 2015) ("The ALJ must ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination"); SSR 00-4p.

## CONCLUSION

Based on the forgoing, the Court finds the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Petitioner has not met his burden of establishing harmful error in support of his request for remand. Accordingly, the Commissioner's decision will be affirmed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**.

2) The Petition for Review (Dkt. 1) is **DISMISSED**.

DATED: September 1, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge